IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SILVIA BARNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-0468-CV-W-REL |
| ) | |
| TRUMAN VALLEY HEALTH CARE, ) | |
| INC., d/b/a WINDSOR HEALTHCARE ) | |
| & REHAB CENTER, ) | |
| ) | |
| Defendant. ) | |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO MAKE MORE DEFINITE

Before the court is a motion to dismiss counts III, IV and VI and to make more definite count I, filed by defendant Truman Valley Health Care. For the following reasons, defendant's motion to dismiss will be granted and its motion to make more definite will be denied.

### I. BACKGROUND

According to the facts alleged in the complaint, which are assumed to be true for purposes of this motion, plaintiff is a 47-year-old female who emigrated from Germany. Plaintiff was hired by defendant in 2009 to work as a registered nurse and was promoted as a manager of other registered nurses. In 2013 she was diagnosed with "chronic brain injury" but was released to return to work. Her brain injury occasionally prevents plaintiff from working and occasionally limits the amount of time plaintiff can work. Defendant permitted plaintiff to take time off work to visit a specialist in Colorado for treatment. After that trip, plaintiff was informed that she had a new supervisor, "Cameron." Cameron wrote a negative comment in plaintiff's employment file for being absent from work to receive medical treatment. Upon learning of plaintiff's background as a German national, Cameron began making derogatory comments about plaintiff's ethnic heritage and accent. Upon learning of plaintiff's "familial status," Cameron on one occasion referred to plaintiff as a "breeder." In

September 2013, plaintiff requested time off under the Family Medical Leave Act ("FMLA") for a doctor's visit. Plaintiff was denied time off. She informed defendant she intended to exercise her rights under the FMLA and did not appear for work. Defendant discharged plaintiff.

On April 23, 2014, plaintiff filed a petition in Henry County Circuit Court. Plaintiff alleges the following:

Count I: National origin discrimination - plaintiff alleges she was terminated due to her national origin, i.e., being a German National.

Count II: Retaliation - plaintiff alleges she was terminated due to her complaints to management that her supervisor, Cameron, was targeting her for disparate treatment on the basis of her sex, disability, and national origin.

Count III: Hostile work environment - plaintiff alleges that defendant destroyed her files and work space, required her to perform a job outside of her responsibilities and skill level, moved her work space in an attempt to intimidate and spy on her, and denied her time off from work.

Count IV: Sex discrimination and violation of the Americans with Disabilities Act ("ADA") - plaintiff alleges that she was terminated because of (a) her sex, (b) her familial status as a mother, (c) her disability, and (d) her national origin.

Count V: Retaliation under the Family Medical Leave Act - plaintiff alleges that she was discharged for failing to report to work after she informed defendant that she intended to exercise her rights under the Family Medical Leave Act.

Count VI: Disability discrimination - plaintiff alleges she was terminated because of her physical disability.

On May 27, 2014, defendant removed the case to federal district court and then filed a motion to dismiss on June 16, 2014, arguing that counts III, IV and VI should be dismissed for failure to state a claim and that count I should be subject to an order to make more definite and

2

certain. In the alternative, defendant argues that plaintiff should be required to plead the multiple claims alleged in count IV as separate counts.

Plaintiff filed suggestions in opposition to the motion to dismiss on July 16, 2014. Plaintiff argues that the petition alleges facts sufficient to state the causes of action alleged, plaintiff states that the reference to "race" in count I of the petition was written in error and that the petition makes clear that count I is based on ethnic and national origin discrimination, and plaintiff argues that count IV should stand as pled because "the elements for proving [discrimination] are similar whether it be gender, sex, or national origin-based.".

Defendant filed a reply on July 28, 2014.

## II. *MOTION TO DISMISS*

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Ritchie Capital Management, L.L.C. v. Jeffries, 653 F.3d 755, 764 (8th Cir. 2011); Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1023-24 (8th Cir. 2008), cert. denied, 555 U.S. 1136 (2009). In ruling a motion to dismiss, the court is required to view all facts in the complaint as true. CN v. Willmar Public Schools, 591 F.3d 624, 629 (8th Cir. 2010); Owen v. General Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008). Although a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). Instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a

3

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Plaintiff's petition includes the following:

---

FACTS COMMON TO ALL COUNTS

13.   In or around 2009, Plaintiff began employment with Defendant.

14.   Plaintiff's duties began as a registered nurse. Plaintiff was later promoted to manage the other registered nurses, which was Plaintiff's primary duty of employment for the last four years.

15.   Throughout her years with Defendant Company, Plaintiff was given several pay increases for her outstanding performance.

16.   In 2013, Plaintiff was diagnosed with chronic brain injury. Her doctor Molly Nelson released Plaintiff to return to work.

17.   Defendant Company was aware of the Plaintiff's condition and allowed her time off to visit a specialist in Colorado for treatment. Defendant allowed the Plaintiff to return to work.

18.   Plaintiff filed notice with the company of her medical condition in order to comply with the Family Medical Leave Act time off request policy of the company.

19.   Shortly after the Plaintiff's return to work in 2013 after visiting a specialist in Colorado she was informed of her new supervisor, Cameron.

20.   Before evening [sic] meeting the Plaintiff, Cameron wrote up a negative comment to the Plaintiff's work file for being absent from work to receive medical treatment, despite the prior approval.

21.   Upon learning of Plaintiff's background as a German national, Cameron began making derogatory comments about the Plaintiff's ethnic heritage and accent in the work place.

22.   Upon learning of Plaintiff's familial status, Cameron began making derogatory comments about the Plaintiff on one occasion labeling her a "breeder" a derogatory slang word for females with children.

23.   In September, 2013 the Plaintiff requested time off under the FMLA for a doctor's visit.

---

> 24. The Defendant was aware of the request and shortly after receiving the request terminated Plaintiff's employment and during the time off requested by the Plaintiff.
>
> 25. On or about September 3, 2012 the Plaintiff was terminated for the alleged inadequate job performance though no specific deficiency was cited.
>
> 26. The Plaintiff was terminated due to her, disability, her ethnicity and national origin and her gender. Defendant Company had a plan or scheme of discrimination against Plaintiff.
>
> 27. Defendant Company dismantled Plaintiff's workspace, caused her to perform extra physical measures to return to work after her treatment, and required her to perform a job outside of her responsibilities during a time she had requested time off due to health reasons.

All of plaintiff's counts incorporate by reference all of the paragraphs preceding them.

### A. *COUNT I*

Defendant argues that plaintiff should be required to re-plead count one because it "alleges in passing that she was terminated because of her 'race'." In her response, plaintiff concedes that the reference to race in count I was an error and that count I is based only on plaintiff's ethnicity and national origin. Because plaintiff has conceded that the word "race" was mistakenly included in count I, defendant's motion will be denied. At the time of trial, race will not be included in any jury instructions or read to the jury in count I.

### B. *COUNT III*

Defendant argues that count III fails to state a hostile work environment claim under the Missouri Human Rights Act ("MHRA").

The MHRA makes it an "unlawful employment practice for an employer to fail or to refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of that individual's race, color, religion, national origin, sex, ancestry, age, or disability." Ruppel v. City of Valley Park, 318 S.W.3d 179, 184 (Mo. App. 2010). Although the MHRA provides some protection against a hostile work environment, no claim exists for a

hostile work environment under Missouri law "unless the hostility is directed at the victim because of his or her race, color, religion, national origin, sex, ancestry, age or disability." Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 521 (Mo. 2009). To prevail on a hostile work environment claim, a plaintiff must prove that: (1) plaintiff was a member of a protected group; (2) plaintiff was subjected to unwelcome protected group harassment; (3) plaintiff's membership in a protected group was a contributing factor in the harassment; (4) a term, condition, or privilege of plaintiff's employment was affected by the harassment; and (5) the employer knew or should have known of the harassment and failed to take appropriate action. Jennings v. Board of Curators of Missouri State University, 386 S.W.3d 796, 802 (Mo. App. 2012); Hill v. City of St. Louis, 371 S.W.3d 66, 70-71 (Mo. App. 2012) ("[T]o recover punitive damages,[1] plaintiffs were required to adduce 'clear and convincing proof of a culpable mental state, either from a wanton, willful, or outrageous act, or from reckless disregard for an act's consequences such that an evil motive may be inferred.' Reckless disregard can be shown by evidence that an employer knew of the harassment and failed to adequately remedy the situation.").

Count III of plaintiff's petition reads as follows:

> 42. Plaintiff is a 47 year old Female of German descent.
>
> 43. Plaintiff was subjected to a hostile work environment.
>
> 44. Defendant destroyed Plaintiff's files and workspace.
>
> 45. Plaintiff was required to perform a job outside of his [sic] responsibilities and skill level per her employment restrictions.
>
> 46. Defendant moved Plaintiff's work space in an attempt to intimidate and spy on the Plaintiff without justification.

---

[1]Plaintiff seeks recovery of punitive damages in each count.

> 47. Defendant denied Plaintiff time off from work provided for by Federal Law.
>
> 48. Plaintiff was subjected to a hostile work environment for the last several months of her employment.
>
> 49. Plaintiff was the subject of a plan or scheme of Defendant to terminate her and this created a very hostile work environment.

Reviewing plaintiff's petition in light of the elements of a claim for hostile work environment, I find that this claim as pled fails to state a claim for which relief may be granted.

### 1. Plaintiff was a member of a protected group.

In count III, plaintiff alleges she is a 47-year-old female of German descent. Although plaintiff does not make clear on which basis she is alleging that a hostile work environment occurred, it could be due to (a) age discrimination, since plaintiff has alleged that she is over 40, (b) sex discrimination, since plaintiff alleged that she is female, or (c) national origin discrimination since plaintiff alleged that she is of German descent. Although plaintiff may not intend for all of these protected groups to be a part of this claim, they are sufficiently pled for purposes of this motion to dismiss.

### 2. Plaintiff was subjected to unwelcome protected group harassment.

The petition alleges that the unwelcome harassment consisted of defendant's (1) destroying plaintiff's files and workspace, (2) requiring plaintiff to perform a job outside of her responsibilities and skill level per her employment restrictions, (3) moving plaintiff's work space in an attempt to intimidate and spy on plaintiff without justification, and (4) denying plaintiff time off from work provided for by Federal Law. Although these may or may not be legally sufficient to establish "unwelcome harassment" for purposes of trial or summary judgment, I find that plaintiff has sufficiently pled this element.

3. **Plaintiff's membership in a protected group was a contributing factor in the harassment.**

Plaintiff does not allege in her petition that her membership in any protected group was a contributing factor in the harassment. Neither does plaintiff allege any facts from which this causal connection can be inferred.

In her response, plaintiff states that "Paragraph 21 of the Complaint sufficiently alleges that the constant harassment she endured in the workplace stemmed from her status as a German national, and Defendant's knowledge of said status." Paragraph 21 of the petition reads as follows: "Upon learning of Plaintiff's background as a German national, Cameron began making derogatory comments about the Plaintiff's ethnic heritage and accent in the work place." However, nowhere in the petition does plaintiff identify any of the comments allegedly made about plaintiff's ethnic heritage or accent. Plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, yet this is all plaintiff has provided with respect to this element of her hostile work environment claim.

In her response, plaintiff points to paragraph 22 of the petition which states as follows: "Upon learning of Plaintiff's familial status, Cameron began making derogatory comments about the Plaintiff on one occasion labeling her a 'breeder' a derogatory slang word for females with children." However, familial status is not a protected class. Plaintiff's argument that the term breeder is reserved for females who have children and therefore constitutes unwelcome harassment based on sex is not persuasive. Any harassment wherein the word "she" were used would satisfy such a requirement. Furthermore, the petition states that the term was used on "one occasion." Incidents must be more than episodic; they must be sufficiently continuous and concerted to rise to the level of pervasive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

8

In her response, plaintiff states that she was subjected to "constant" harassment; however, nowhere in the petition does plaintiff refer to anything as being "constant." In her response plaintiff states that "male Defendants" made derogatory comments about her; however, nowhere in the petition does plaintiff identify anyone associated with defendant as a male. Plaintiff merely refers to her new supervisor as "Cameron" without indicating whether that was her supervisor's first name or last name, and plaintiff fails to identify Cameron's sex. Plaintiff does not even refer to Cameron as "he" or "she" anywhere in the petition.

In her response, plaintiff states that defendant destroyed "her files and workspace" however, plaintiff fails in her petition to allege that those files were her personal property as opposed to the property and workspace of the defendant, her employer.

In her response, plaintiff states that defendant demanded that she perform "more strenuous tasks thus exploiting her disability" however, in the petition, plaintiff does not allege that she was asked to perform more strenuous tasks. The petition states that plaintiff was required to perform "a job outside of his [sic] responsibilities and skill level per her employment restrictions." Nowhere in the petition does it describe any of these responsibilities as strenuous or even manual.

Plaintiff's petition merely lists things that happened to her that she believes were unfair or improper without tying them to the fact that she is a member of a protected class. This is an important element because the law does not prohibit unfair or mean treatment -- it only prohibits that type of treatment if it is based on an employee's race, color, religion, national origin, sex, ancestry, age, or disability.

4. **A term, condition, or privilege of plaintiff's employment was affected by the harassment.**

Discriminatory harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of a plaintiff's employment and

9

create an abusive working environment. <u>Alhalabi v. Missouri Dept. of Natural Resources</u>, 300 S.W.3d 518, 523 (Mo. App. 2009); <u>Cooper v. Albacore Holdings, Inc.</u>, 204 S.W.3d 238, 244 (Mo. App. 2006). The conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person. <u>Alhalabi v. Missouri Dept. of Natural Resources</u>, 300 S.W.3d at 523. A plaintiff can meet the requirement of proving that the harassment affected a term or condition of her employment by showing that the harassment contributed to cause a "tangible employment action." <u>Hill v. Ford Motor Co.</u>, 277 S.W.3d 659, 666 (Mo. 2009). A "tangible employment action" is a "significant change in employment status . . . the means by which the supervisor brings official power of the enterprise to bear on subordinates." <u>Id</u>. Termination is an example of a tangible employment action. <u>Id</u>. Because plaintiff has alleged that the harassment contributed to cause a tangible employment action, i.e., her termination, this element is satisfied for purposes of this motion to dismiss.

**5. The employer knew or should have known of the harassment and failed to take appropriate action.**

Plaintiff must prove this element in order to be entitled to punitive damages. Plaintiff has included a prayer for punitive damages. Although plaintiff's petition is not clear about who did what, with the exception of identifying "Cameron" as the person who wrote up a negative comment in plaintiff's employment file and who made derogatory comments, plaintiff refers to "Defendant" as having performed most of the actions alleged.

Conclusion. Because the petition fails to allege that her membership in a protected group was a contributing factor in the harassment, and because plaintiff states only conclusions rather than facts from which such a causal connection can be inferred, she has failed to state a claim for which relief can be granted. This count will be dismissed.

C. *COUNT IV*

As defendant points out, plaintiff has alleged two claims in count IV -- discrimination based on sex and a violation of the Americans with Disabilities Act.

Count IV of plaintiff's petition reads as follows:

> 53. Plaintiff is a 47 year old female of German descent who is a mother.
>
> 54. Plaintiff was terminated because of her sex and familial status as a mother, her disability and her national origin.
>
> 55. Defendant fired Plaintiff and other supervisor personnel for alleged unsatisfactory job performance.
>
> 56. Defendant's actions were based on the plaintiff's sex and familial status as a mother, her disability and her national origin.

### SEX DISCRIMINATION

The MHRA makes it unlawful for an employer to discharge or discriminate against any employee because of the employee's sex. Ruppel v. City of Valley Park, 318 S.W.3d 179, 184 (Mo. App. 2010). To state a claim for sex discrimination in the workplace, the employee must satisfy four elements: (1) she was a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males. Id. at 185. The fourth element of a prima facie discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination." Id., citing Buchheit, Inc. v. Missouri Commission on Human Rights, 215 S.W.3d 268, 277 (Mo. App. 2007). Overall the employee must establish that sex was a "contributing factor" in the employer's discriminatory conduct. Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007).

1. **She was a member of a protected class.**

In count IV, plaintiff alleges she is a 47-year-old female of German descent. The title of this claim indicates plaintiff is alleging sex discrimination and violation of the Americans with

11

Disabilities Act. Because she alleges she is female, she has alleged that she is a member of a protected class for purposes of the sex discrimination claim.

### 2. She was qualified to perform her job.

Although plaintiff does not mention her qualifications to perform her job in this count, she incorporates all of the preceding paragraphs. Paragraphs 14 and 15 of the petition allege that plaintiff's duties began as a registered nurse, she was later promoted to manage the other registered nurses, she held this management position for the last four years of her employment with defendant, and throughout her years with defendant she was given several pay increases for her outstanding performance.

### 3. She suffered an adverse employment action.

Plaintiff alleges that she was terminated.

### 4. She was treated differently from similarly situated males.

Plaintiff does not allege that she was treated differently from similarly situated males. In fact, her petition states that, "Defendant fired Plaintiff and other supervisor personnel". Plaintiff fails to identify those "other supervisor[y] personnel" as male or female.

This element of a prima facie discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination." However, plaintiff's petition fails to accomplish this. She alleges that she was discriminated against because of her familial status; however, that is not a protected class. Plaintiff states in her response that the petition "clearly states that Defendants' actions were 'based on the plaintiff's sex.' The derogatory term used, 'breeder,' relates to 'females with children.'" This is not persuasive. As discussed above, the petition states that the term was used on "one occasion." Incidents must be more than episodic; they must be sufficiently continuous and concerted to rise to the level of pervasive. Faragher v. City of Boca Raton, 524

U.S. 775, 787 (1998). Use of this term on one occasion does not constitute a sufficient factual basis to give rise to an inference of unlawful discrimination based on sex.

## DISABILITY DISCRIMINATION

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A "qualified individual" under the ADA means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). "The ADA defines 'disability' as '(A) a physical or mental impairment that substantially limits one or more. . . major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Webb v. Mercy Hospital, 102 F.3d 958, 960 (8th Cir. 1996) (quoting 42 U.S.C. § 12102(2)(A)-(C)).

Under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973), framework, a discrimination plaintiff must first establish a prima facie case of discrimination. Olsen v. Capital Region Medical Center, 713 F.3d 1149, 1153 (2013). A plaintiff must show that: (1) she is disabled; (2) she is qualified to perform the essential functions of her job, with or without accommodation; and (3) she suffered an adverse employment action under circumstances from which an inference of unlawful discrimination could be inferred. Id. at 1153-1154. A "qualified individual" is one, who, with or without reasonable accommodation, can perform the essential functions of her position. Id. citing 42 U.S.C. § 12111(8). A "reasonable accommodation" is defined as "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii).

13

1. **She is disabled.**

Plaintiff argues that she has adequately pled that she suffers from a disability as denied in the ADA. The ADA defines "disability" as (A) a physical or mental impairment that substantially limits one or more... major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. Plaintiff states in her response that she alleged a chronic brain injury which interferes with her ability to work: "Working is recognized as a major life activity within the meaning of the ADA."

Title 42, United States Code, Section 12102(2)(A) states that, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Therefore, plaintiff has adequately pled that she suffers from a disability under the ADA.

2. **She is qualified to perform the essential functions of her job, with or without accommodation.**

Here plaintiff has failed to allege that she is qualified to perform the essential functions of her job, with or without accommodation. Because being absent from work is the only thing plaintiff's petition identifies with respect to the effects of her chronic brain injury, permitted absenteeism can be the only "reasonable accommodation."

The court in Brannon v. Luco Mop Co., 521 F.3d 843, 849 (8th Cir. 2008), discussed the reasonableness of such an accommodation under the ADA:

> We have previously held that regular attendance at work is an essential function of employment. See Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir. 1999) ("[I]t is axiomatic that in order for [an employee] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work."). While allowing a medical leave of absence might, in some circumstances, be a reasonable accommodation, see id. at 1049 n. 3, "[a]n employer is not required by the ADA . . . to provide an unlimited absentee policy." Buckles v. First Data Res., Inc., 176 F.3d 1098, 1101 (8th Cir. 1999); see also Pickens v. Soo Line R.R. Co., 264 F.3d 773, 778 (8th Cir. 2001) (holding that plaintiff's requested accommodation of "be[ing] able

to work only when he feels like working" is unreasonable as a matter of law). Furthermore, Brannon failed to demonstrate that her requested accommodation of additional time off to recuperate would have enabled her to have consistent attendance at work. See Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003) ("[T]he employee must also make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job." Therefore, she failed to make a facial showing that she was a "qualified individual".

In addition, plaintiff has failed to allege that she is capable of performing the essential functions of her job with or without accommodation. Because her disability interferes with her ability to work, plaintiff cannot leave to the imagination what part of "working" is limited in order to qualify her as suffering from a disability for the first element while also leaving to the imagination what essential job functions she is still able to perform for the second element of this claim. Finally, there is no mention in her petition of reasonable accommodation.

Because the petition fails to allege that plaintiff was treated differently from similarly situated males, fails to provide some other evidence that would give rise to an inference of unlawful discrimination based on sex, and fails to allege or provide facts which could support an inference that she is capable of performing the essential functions of her job with or without accommodation, she has failed to state a claim for which relief can be granted. This count will be dismissed.

### D. COUNT VI

Count VI of plaintiff's petition includes the following:

> 67. Barney has been diagnosed with a chronic brain injury which occasionally prevents Barney from working.
>
> 68. Barney was terminated because her physical disability occasionally limited the amount of time Barney could work.

The Eighth Circuit analyzes MHRA claims of disability discrimination the same as ADA claims. Treanor v. MCI Telecommunications Corp., 200 F.3d 570, 574 (8th Cir. 2000).

15

Resolution of the ADA claim also disposes of the MHRA claim. Schuler v. Phillips Petroleum Co., 169 F.3d 1171, 1172 (8th Cir. 1999). Therefore, this claim will be dismissed.

## III. CONCLUSION

Based on the above, I find that plaintiff has failed to state a claim for which relief can be granted in counts III, IV and VI. Therefore, it is

ORDERED that defendant's motion to dismiss counts III, IV and VI is granted. Counts I, II, and V remain pending. It is further

ORDERED that defendant's motion to make count I more definite is denied.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 15, 2014